May it please the court, counsel. Gerardo Gutierrez arguing on behalf of the defendant, Mr. Herrera-Valdez. I raised two issues, judge. I'm going to focus on my main issue, which is the recusal issue. Judge, the statute 28 U.S.C. section 455 says that any judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. And that is supported by United States v. Lara Unzueta, which happens to be a case that's very hearing before the court. The issue is not whether Judge Deryagin did in fact have a conflict of interest, even though we are claiming that he did have a conflict of interest. The real issue is whether it might reasonably be questioned to a reasonably well-informed observer. And I make the analogy, judge, of the architect who is involved in signing off on the plans for a bridge and the bridge collapses, and then 12 years later is on the inquiry board for the bridge collapse. And I think that that analogy suits this case rather well, because Judge Deryagin was the chief counsel at the time for INS, who was in charge of denying essentially the appellate- Do we know how many subordinates the district counsel in this district, I assume, has? Well, the exact number I'm not familiar with, judge, but I do know that in this particular case there were two subordinates. One was the assistant chief counsel on the direct appeal- No, I didn't make myself clear. I was just curious, do we know anything about how many persons he supervises? I mean, we know, for example, what, the U.S. attorney's office here has 200 lawyers or something like that? Okay, so a U.S. attorney would have 200, you know, principal subordinates. People actually do the prosecutions. And I'm just curious if we know anything about the corresponding number of prosecutors that the district counsel would- I don't believe it's as high as the actual number of U.S. attorneys, but I don't know the exact number. I know it's less than 50, because I deal with them all the time. I seem to know them personally. But I don't know the exact number, judge. I do know that the office has changed since Judge Deryagin was the chief counsel. And I know the assistant counsel who handled the and she remembered that case very well. In fact, she recited the facts to me, so she was aware. Now, I can't then turn around and impugn that on her boss at the time, but I think that- And then she, you have an affidavit from her, just to remind me, or you know, what's in the record on that? Yes, I didn't get an affidavit of that, Judge. I just put a footnote of my conversation with Ms. Lynn Hollander. So, but she remembered it? She remembered it very clearly. And you don't have anything on what the volume was like, either, of cases at the time? I do not, Judge. Or the reporting structure, other than she was deputy. So, would you discuss with her how those things were reviewed at the All I really know about Judge Deryagin's involvement in that case is that he signed off on it, which means he had to have reviewed it. He had to at least have read the pleadings. And it was an odd decision on the second motion to reopen, because on the first motion to reopen, they struck the motion because, apparently, the counsel did not present the case to former counsel officially as required under the law. But in the first go-round, counsel makes it quite clear to the board that he had, in fact, miscalculated the time to file. He had included in his calculation how there was a day missing because of holiday that was sandwiched in between there. So, counsel admitted that he had miscalculated the 30-day time rule and filed it on the 31st date. The Board of Immigration Appeals held him strictly accountable and dismissed the direct appeal to the Board of Immigration Appeals. On the motion to reopen, the first motion to reopen, the attorneys claimed that it was pretty self-evident, that it was an ineffective assistance of counsel, that counsel had admitted that he had, in fact, blown the deadline, so to speak, and that the board should take notice of that. The response was, well, no, you didn't strictly comply with the requirements and, therefore, you didn't serve notice on the attorney and get his response as to what the of ineffective assistance of counsel was. So, on the second motion to reopen, on the subsequent motion to reopen, he did get an affidavit and he did submit the ARDC investigation that was open against the prior attorney, but this time the attorney failed to pay the fee and then that was summarily dismissed as well. And what Ms. Hollander recalls is that while she was drafting her response to the second motion, BIA ruled without a response necessary. So, in both, in all three of those instances, and in the second one, of course, on the last response, it was pre-termited by the judge Duryagan signed off. And then I was looking for this footnote. It's not in your brief. What was it in the brief below? Actually, it's the footnote. I don't see it being specifically about her recalling. I know you have in the footnote. Yes. You have this attached exhibit BIA letter to Hollander. It's actually on my reply brief, Judge, on page 12. Okay. I didn't check that. Okay. And, you know, it just goes to the issue of whether a person who has that high of a responsibility in the chain of a denial of an individual's rights, and certainly I'm not- Well, no, the reason it's important to me is it's given the length of time it's been and given the for her to remember this case is an unusual thing, I think. I think that's kind of unusual. So, that's the only reason I wanted to know what you got an affidavit from or where, you know. Well, you know, I didn't want to, what I didn't want to do is put Ms. Hollander in the middle of her office and what it was about. So, in that regard, I didn't want to sandbag somebody that I go up against all the time and I have the highest respect for Ms. Hollander. But what it went to show is that since we're talking about might be and appearances, that it's not inconceivable that somebody like Judge Duryagan would remember this case. It doesn't matter. It's an entirely distinct proceeding. I mean, for example, there's nothing improper with a district judge hearing a criminal charge in a case involving a defendant who has appeared before him before. Right, but we're not... Even if the prior criminal conviction is going to be used to enhance any subsequent sentence. There's no appearance of impropriety in that. So, Judge Duryagan's name on these documents as the district counsel creates no appearance of impropriety because it's an entirely distinct proceeding. Judge, I respectfully disagree. If the judge is being asked to pass on the efficacy of a decision that he had his hand in, that is not... He's not being asked to pass on the efficacy of that. I beg to disagree, Judge. When I file a 1326D motion claiming that the proceedings below were unconstitutional... Based on ineffective assistance of counsel. You're trying to collaterally attack the removal order based on ineffective assistance, and there are all kinds of procedural barriers to doing that. So, this is not going to present any kind of... That's precisely what 1326D allows. 1326D is the fail-safe rule that allows a litigant to attack the underlying order of deportation. And in this case, the underlying order of deportation was signed off by Judge Duryagan. Now, whether he remembers it, whether it's too old, those go to the facts. Those go to the facts of the matter. Those go to was there an actual conflict. If what Lara Unzueta is holding is accurate, then the Hatcher matter has no bearing anymore. Then, actually, the Rule 455A where it says, might reasonably question by a reasonably well-informed observer, that's hard to get around. Because we're not talking about the actual conflict. We're talking about appearances by someone who says, by the way, how could... In fact, my client, he says, how could the man who signed off on my deportation order twice be the same judge who's going to pass on the efficacy of that deportation order? That overstates the motion to dismiss issue. It's not the efficacy of the deportation order. It's whether there was an opportunity for judicial review to correct impairments in that order. And there was plenty of opportunity for judicial review. So you're barred from collaterally attacking it. This is the second issue, but they're intertwined in that respect. You can't... We're not talking about the general efficacy or propriety or correctness of the order. We're only asking whether there was an opportunity to challenge it, which there was, and it wasn't sought. Judge Sykes, I... You don't get to categorically... I'm not picking up... I'm not picking up... I guess I'm not picking up the distinction you're making. I'm not picking up how, if... 13, 2016 does not allow you to challenge the efficacy of the removal order. The constitutionality, it does. It allows you to collaterally attack if you were improperly deprived of an opportunity for judicial review of the food chain. There's nothing to support that here. Well... So it does not involve an evaluation by Judge Duryagin of what happened in the removal hearing. It only involves an evaluation of whether you had an opportunity to challenge it, which your client did. So that's the end of the 1326D inquiry. So is Your Honor saying that the inquiry ends just merely by the fact that he was able to challenge it with the Board of Immigration Appeals? That's one of the criteria to collaterally attack a removal order, and if you had an opportunity for judicial review, it's the end of the question. We don't go any further. You don't go into ineffective assistance? No, if you hadn't... I mean, according to my reading of the criteria in the case law to make it recursive. So Ms. Alexakis? May it please the Court, my name is Georgia Alexakis, and I represent the United States. This Court should affirm the defendant's conviction. The District Court did not err in denying the defendant's motion for a recusal. There's no appearance of impropriety here where the District Court judge's name, simply in his official capacity as INS District Counsel, appeared on two short, routine pleadings filed by the service nearly 15 years ago. Well, what's the policy of the U.S. Attorney's Office? Isn't it the policy that if the U.S. Attorney's Office is in the office, they can't participate in any case involving the prosecution when he was the U.S. Attorney? Your Honor, I don't know if that's a policy of the office, necessarily. My understanding is that if someone within the office in a supervisory capacity assumes the bench, there's a time period under which that judge can then no longer hear criminal cases. No, I'm talking about cases that were brought or prosecuted while he was the U.S. Attorney. Now he becomes a judge, and those cases reappear, and I think he has to recuse, or at least it's the policy of the Justice Department, that he has to recuse himself. Your Honor, I'm not familiar with the policy of the Justice Department. If that is the policy of the Department of Justice, shouldn't it be the policy of the Immigration Court, which is part of the Department of Justice? Again, I don't know. Was it now Judge Derjagian's position as District Counsel, similar to that, parallel to that of a U.S. Attorney? He's in charge of the prosecution of immigration violations in a federal district. Yes, Your Honor, but here Judge Derjagian is not being asked to judge, as Judge Sykes explained, the efficacy of the deportation order. What he's presiding over now is a distinct criminal proceeding, and it's a distinct criminal proceeding in which the defendant is challenging the assistance of counsel that he received in his underlying immigration proceedings. But under 455A, there's no appearance of impropriety here where there's no suggestion that Judge Derjagian in any way, and to use defense counsel's words, signed off on the underlying of pleadings. Except his name was on it. His name appears on it. His name was on the pleadings, and that, and this is really a little different from that Lara case, because that case was, it really wasn't raised pre-trial, was it? No, you're correct, Judge Williams. And there was an intervening criminal conviction there? There were two deportation proceedings in Lara-Ansuera, but only one criminal proceeding. So you're correct that Lara-Ansuera is distinguishable on that ground. Lara-Ansuera also deals with 455B3, a different prong of the recusal statute than the one at issue. The government concedes that this is not, this case is not solely decided by Lara-Ansuera. But at the same time, Lara-Ansuera informs the decisions here. For example, Lara-Ansuera points out that there is... Well, suppose Judge Derjagian said in this case, yes, I remember that case where we ordered that fellow deported, and he certainly deserved to be deported, bad guy. Would that make no difference? That would make a difference, Your Honor, but that's not... So what is the difference between that case and this case? Well, here Judge Derjagian specifically noted in his opinion, denying the defendant's motion to recuse, that he had no recollection whatsoever. Yes, but you know, people say, that doesn't work, no recollection, right? First of all, you don't know whether to believe it. And secondly, people, someone may not have a recollection, a conscious recollection of something, but you can have that in your mind beneath the surface, and you're not aware of it. But nevertheless, your mind, your brain knows that you've seen this person before, and you had an opinion about this person. That, I take it, is why the U.S. Attorney's Office, as I understand it, says, yeah, if you've been U.S. Attorney and become a judge, you can't have, you can't be involved in cases that involved, that grow out, in this case, grow out of cases that were in your office, under your supervision, even though you probably had nothing to do with it. There's no suggestion here, though, Judge, that there is any reason to doubt, there's no suggestion here, though, that there's any reason to doubt Judge Derjagian's statement that he has no recollection of the case. You weren't listening to me, obviously. I've already said, Your Honor. First of all, you don't know whether it's true, and second of all, you don't necessarily need a conscious recollection to be influenced by something that's happened in your past. I heard what you said, Judge, and what I'm trying to say is that there's no reason to doubt. I understand your qualifications, the qualification that you're making on my following statement, but there's no indication, there's nothing in the recollection when he says that he doesn't. Well, what would you expect to be in a record about whether he has a recollection? Well, for example, defense counsel has now said on appeal for the first time in his reply brief about a conversation that he's had off the record with a supervisory attorney in the district counsel office. There's nothing in the record to support that. This is the first time that any mention of this conversation or any mention of this supervisor's appeal, but there was evidence there. I agree with you completely about that. My point was different. We don't know whether, there's no evidence one way or the other that allows you to decide whether this earlier proceeding had any influence. Now, my guess is it didn't, okay, but the question is are we better off with a rule which says you were involved in the case years ago, doesn't matter, probably don't remember. Nevertheless, it's better that you not participate in this related case against the same person where that original deportation has played a role. I don't think that we need such a blanket rule. I think that we need the rules that are in place. Why? I mean, we've got loads of judges who have not been district counsels, right? This rule about the U.S. attorneys, I think it's something of a pain for a person who's appointed a judge after being a U.S. attorney and may have had hundreds of cases, but nevertheless, that's the rule that the courts have been comfortable with and the U.S. Attorney Justice Department has done. As I say, the Immigration Court is part of the Justice Department and these administrative law, these immigration judges are, you know, as I say, they're part of the enforcement machinery of the Justice Department, just like the U.S. attorneys. I believe that the circuit's precedent and the case law regarding Section 455A provides district judges with adequate guidance on when they should recuse themselves under that statute. So you don't think it even, it's the appearance because it hasn't been sufficient evidence to show actual conflict. So we're talking about appearance of immigration. That's right, Judge Williams. That's what we're talking about. Right, and I look a lot to the- And so I assume the government opposed then when the defense first raised this, opposed the motion for Judge Darriagan to recuse. The government actually took no position on the defendant's motion to recuse and left it to the judge's discretion. So clearly, had he recused, we wouldn't be here. If he had recused, not on this particular issue, no. On this particular, I'm just saying, I understand you stood neutral and said it was up to the judge, but how shall I say this? Sometimes when one is looking at the long, long road ahead, it certainly makes some sense when you look at the long road. Look, even if we think probably he can't make it, might be better to recuse. I mean, there's nothing wrong with you saying that to the court. Correct. You're saying, we're taking no position on this, Judge, but should this arise, this could arise as an issue, and we're aware of that. We understand your position. I mean, in a way where you're not offending the court, I'm just saying long term, we wouldn't even be here, because I think he probably would have taken that as a hint. I can see circumstances, Judge, where in a USA where a prosecutor or the government might take such a position. In this case, though, the government did not. We stayed neutral. And I want to emphasize the language that appears in In re Sherwin-Williams, the 2010 case on 455A language. And in particular, what Sherwin-Williams talks about is how we should decide, how a district court judge should decide or any judge should decide whether or not there's an appearance of impropriety. And they need to look at it from an objective standpoint, from the viewpoint of a reasonable observer. And that reasonable observer is not someone, the language from Sherwin-Williams is not someone who is hypersensitive or overly paranoid, but rather someone who understands the overall context, the facts and circumstances of the case. So I guess I would say, so we're looking at the defendant and the person who was subject to the removal order. So you're saying that wouldn't be, that person's view, that person would be overly They would remember the judge because it was a removal order. Correct. I mean, the district counsel's name. Correct. And then seeing the same person who was district counsel when they were removed would give them some concern. Correct. I agree. So, but that's not the standard, what the actual person who's the subject of the lawsuit. Yes, judge. I agree that the defendant in that case would not be a reasonable observer under Sherwin-Williams. The reasonable observer would be someone who wouldn't understand that Judge Driegan had an elevated position within the office, that he was overseeing a number of district counsel who had heavy caseloads. How many? Your Honor, that is not in the record. Well, you should know. I understand, Your Honor, that at this time there are approximately You should have known. There are approximately 25 assistant district counsel in the office and that their caseloads are, I don't have an exact number. My understanding is that it is, for example, much more substantial, the average caseload for a district counsel than the average caseload for a prosecutor, for example, in the U.S. Attorney's Office. And probably back then, because there are 25 now, so probably back then, I mean, this is total speculation, there were probably less, but we don't know that. I don't know that, Judge. All I know, again, nothing in the record, but I just know from conversations with But it is odd that a U.S. attorney who has 200 lawyers working for him should be under a different recusal standard from a district counsel who has 25 or fewer. Doesn't that seem odd? And, Your Honor, again, I go back to the fact that I simply don't know what the department's policy is in that respect. No, that is the department's policy. Well, then, I mean, I also look at 455B3, which has distinguished the U.S. attorney from district counsel under the recusal prong and has treated them differently. And so I have to believe that there's some distinction there that would also merit it. But the general principle is recuse when in doubt. The general principle— Because there are plenty of judges, you know. Well, recuse when there's a possible appearance of impropriety. And the government does not believe that there was such an appearance in this case. And so, seeing that my time is up, unless anyone on the panel has questions either on the recusal issue or the motion to dismiss the indictment, the denial of that motion the defendant has raised, I would simply ask that the court affirm the defendant's conviction. Okay. Thank you, Ms. Alexis. Mr. Gutierrez, you want another minute or so? Okay. Well, thank—and you were—were you appointed? Okay. Well, we thank you for your efforts.